UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATINA T. HASLAM,

                Plaintiff,        Civil Action No. 16-11793
                                          Honorable Matthew F. Leitman
                                          Magistrate Judge David R. Grand
v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [11, 14]

Plaintiff Katina Haslam ("Haslam") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [11, 14], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Haslam is not disabled under the Act is not supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [14] be DENIED, Haslam's Motion for Summary Judgment [11] be GRANTED IN PART to the extent it seeks remand and DENIED IN PART to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. §405(g), this case be REMANDED to the ALJ for further proceedings consistent with this Recommendation.

## II.     REPORT

### A.     Procedural History

On July 18, 2013, Haslam filed an application for DIB, alleging a disability onset date of June 15, 2010. (Tr. 130-36). This application was denied initially on September 24, 2013. (Tr. 92-95). Haslam filed a timely request for an administrative hearing, which was held on January 12, 2015, before ALJ Yasmin Elias. (Tr. 34-78). Haslam, who was represented by attorney Lisa Welton, testified at the hearing, as did vocational expert Judith Findora. (*Id.*). On March 13, 2015, the ALJ issued a written decision finding that Haslam is not disabled under the Act. (Tr. 19-29). On March 22, 2016, the Appeals Council denied review. (Tr. 1-5). Haslam timely filed for judicial review of the final decision on May 19, 2016. (Doc. #1).

### B.     Framework for Disability Determinations

Under the Act, DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §423(d)(1)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in

> the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps ….  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### C. Background

#### 1. Haslam's Reports and Testimony

At the time of the hearing, Haslam was 42 years old, and at 5'2" tall, weighed 225 pounds.  (Tr. 45, 147).  She testified that she had recently lost weight, following gastric bypass surgery.  (Tr. 45-46).  She completed high school and earned a certificate as a medical assistant.  (Tr. 49, 176).  She was living in a house with her husband and three of her seven children.  (Tr. 47, 158).  Previously, she worked as a patient care technician at Beaumont Hospital; however, she quit that job in June 2010, when she reinjured her shoulder (which had previously been injured in a 2005 car accident).  (Tr. 51, 175).  Subsequently, she worked as a paid caregiver for her mother.  (Tr. 49-50).  She now alleges disability as a result of fibromyalgia (which causes chronic, whole-body pain), neck and left shoulder pain, tarsal tunnel syndrome and carpal tunnel syndrome, and depression.  (Tr. 41-42, 59, 175).

Haslam testified that she is able to care for her own personal needs, but needs help with

her hair and tying her shoes. (Tr. 67, 159). She testified that she does not perform any household chores and only leaves the house for doctors' appointments. (Tr. 67-68). She has a driver's license but does not drive. (Tr. 49). Haslam further testified that she can sit for at least two hours, but can lift less than five pounds. (Tr. 63-64). She has problems with her memory and has difficulty concentrating because her mind is "racing." (Tr. 65-66). She claims that, approximately three days a week, she has a "bad day" and does not even get out of bed or get dressed. (Tr. 59-60, 68-69). She takes Dilaudid and Exalgo for pain, and receives injections in her upper back, which provide "minimal" pain relief. (Tr. 60). She testified that these medications cause side effects, including drowsiness and dizziness. (Tr. 61).

### 2. Medical Evidence

The Court has thoroughly reviewed Haslam's medical record. In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

### 3. Vocational Expert's Testimony

Judith Findora testified as an independent vocational expert ("VE") at the administrative hearing. (Tr. 70-77). The ALJ asked the VE to imagine a claimant of Haslam's age, education, and work experience who can perform light work, with the following additional limitations: occasional operation of foot controls; occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; no climbing of ladders, ropes, or scaffolds; occasional reaching overhead bilaterally; limited to simple, routine, repetitive tasks that require no more than the occasional use of judgment; and only occasional interaction with the public and coworkers. (Tr. 74-75). The VE testified that the hypothetical individual would not be capable of performing Haslam's past relevant work. (*Id.*). However, the VE testified that the

hypothetical individual would be capable of working in the jobs of cleaner (300,000 jobs nationally), administrative support worker (300,000 jobs), and packer (312,000 jobs). (*Id.*).

### D. The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that Haslam is not disabled under the Act. At Step One, the ALJ found that Haslam has not engaged in substantial gainful activity since June 15, 2010 (the alleged onset date). (Tr. 21). At Step Two, the ALJ found that Haslam has the severe impairments of history of tarsal tunnel syndrome status-post release surgery and plantar fasciitis of the feet; degenerative joint disease of the shoulders status-post surgery on the left shoulder; fibromyalgia; depression with insomnia; pain disorder; dependent personality; and adjustment disorder. (*Id.*). At Step Three, the ALJ found that Haslam's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 23).

The ALJ then assessed Haslam's residual functional capacity ("RFC"), concluding that she is capable of performing light work, with the following additional limitations: occasional operation of foot controls; occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; no climbing of ladders, ropes, or scaffolds; occasional reaching overhead bilaterally; limited to simple, routine, repetitive tasks that require no more than the occasional use of judgment; and only occasional interaction with the public and coworkers. (Tr. 22).

At Step Four, the ALJ determined that Haslam is unable to perform any of her past relevant work. (Tr. 27). At Step Five, the ALJ concluded, based in part on the VE's testimony, that she is capable of performing a significant number of jobs that exist in the national economy.

(Tr. 28). As a result, the ALJ concluded that Randolph is not disabled under the Act. (Tr. 29).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals

Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

**F.    Analysis**

As set forth above, after finding that none of Haslam's impairments meet or medically equal a Listing, the ALJ then assessed Haslam's RFC, concluding that she is capable of performing a reduced range of light work. (Tr. 22). In her motion for summary judgment, Haslam argues that the ALJ's RFC finding is not supported by substantial evidence because, in formulating her RFC, the ALJ erred in weighing the medical opinion evidence. (Doc. #11 at 22-26). For the reasons set forth below, the Court agrees.

As the Sixth Circuit has recognized, "Residual functional capacity is defined as the most a claimant can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009) (citing 20 C.F.R. §§404.1545(a) and 416.945(a)). Pursuant to Social Security Ruling ("SSR") 96-8p:

> In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

*Soc. Sec. Rul. 96-8p*, 1996 WL 374184, at *6-7 (July 2, 1996).

From a mental perspective,[1] the ALJ found that Haslam has the RFC to perform simple, routine, repetitive tasks that require no more than the occasional use of judgment, and is limited to only occasional interaction with the public and coworkers. (Tr. 22). In reaching this conclusion, the ALJ gave "significant weight" to the opinion of state agency psychologist Rose Moten, Ph.D., who, on September 23, 2013, reviewed Haslam's medical records and opined that she is capable of engaging in "simple, unskilled repetitive work activity with little to no independent judgment and limited contact with the public, supervisors and coworkers." (Tr. 27 (citing Tr. 84)). Haslam now argues that the ALJ erred in giving significant weight to Dr. Moten's opinion because it was rendered prior to – and therefore without the benefit of information regarding – the vast majority of her mental health treatment. (Doc. #11 at 24-26).

The Court agrees that, under the circumstances, where Dr. Moten issued her opinion in September 2013 – and, thus, could not have taken into account evidence pertaining to Haslam's mental health after that date – the ALJ erred in giving significant weight to this opinion.

---

[1] Haslam also argues that the ALJ erred in finding that, from a physical perspective, she retains the RFC to perform light work, with only occasional operation of foot controls, climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; no climbing of ladders, ropes, or scaffolds; and only occasional reaching overhead bilaterally. (Doc. #11 at 25-26). Because the Court finds error warranting remand in the ALJ's evaluation of Haslam's *mental* RFC, it need not consider the merits of this argument in detail (or discuss in detail medical evidence pertaining to her physical impairments). On remand, however, the ALJ should thoroughly evaluate the medical evidence pertaining to Haslam's physical impairments in considering her allegations of disability.

Although there is no categorical requirement that a non-treating source's opinion be based on a "complete" record, courts have recognized that, under certain circumstances, it is error for the ALJ to accord significant weight to a "stale" opinion of a non-treating source. *See, e.g., Blakley*, 581 F.3d at 408-09; *Blanchard v. Comm'r of Soc. Sec.*, 2012 WL 1453970, at *18 (E.D. Mich. Mar. 16, 2012); *Garber v. Astrue*, 2012 WL 1069017, at *10 (N.D.N.Y. Mar. 2, 2012) ("It is true that stale, conclusory reports of state agency officials based upon incomplete medical records may not constitute substantial evidence.").

Here, at the time Dr. Moten issued her opinion, the only mental health evidence in the record that she considered was the opinion of the consultative examining psychiatrist, M. Dibai, M.D. (Tr. 88 (citing Tr. 378-82)). Haslam presented to Dr. Dibai on September 11, 2013, and reported suffering from a number of physical impairments (including shoulder pain, plantar fasciitis, numbness, and tingling), as well as depression. (Tr. 378-79). According to Haslam, she was sexually abused as a child by a friend of her mother and subsequently removed from her home and placed in a group home. (Tr. 379). At the time of the consultative examination, Haslam reported spending most of her time in her room, saying she preferred watching television alone to spending time with her husband and children. (*Id.*). Dr. Dibai observed that Haslam was "defensive and somatizing her anxiety" and "seemed preoccupied with her pain significantly," saying that she "totally avoided face to face eye contact" and "sat in the chair rolling, twisting, and moving in different directions." (*Id.*). On mental status examination, Haslam presented with marginal self-esteem and mediocre motoractivity; was "evasive" and appeared to be dissociating; seemed "amotivational, partly dependent, and partly autonomous"; and demonstrated compromised insight and judgment. (Tr. 380). She "appeared with apathy and indifferent distant mood," her affect was shallow, and her facial expression was vacuous.

9

(*Id.*).  Dr. Dibai diagnosed Haslam with chronic pain disorder associated with psychological factors and medical conditions, and depressive disorder; characterized her prognosis as fair to guarded; and assigned a Global Assessment of Functioning ("GAF")[2] score of 39.  (Tr. 381).  Dr. Dibai further opined that Haslam "would benefit from multi-modality psychiatric treatment as well as social and occupational training."  (*Id.*).

Even assuming that Dr. Moten's opinion that Haslam can perform certain unskilled work is consistent with Dr. Dibai's opinions regarding her GAF score and need for psychiatric treatment and social/occupational training,[3] the record evidence suggests that her mental impairments worsened thereafter, a fact that could not have been considered by Dr. Moten at the time she formulated her opinion.  Indeed, records show that Haslam was admitted to the Behavioral Center of Michigan on April 6, 2014, on a petition, with suicidal ideation, auditory and visual hallucinations, and impaired reality testing, insight, and judgment.  (Tr. 395-96).  On admission, she was disheveled in appearance with decreased psychomotor activity, evasive and guarded, somewhat lethargic, with a depressed mood and restricted affect, racing thoughts and mood swings, and a GAF score of 15.  (Tr. 395).  She was treated on an inpatient basis and subsequently discharged on April 11, 2014, with a GAF score of 45.  (Tr. 395-96).

---

[2] GAF examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations.  *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009).  A score between 31 and 40 indicates some impairment in reality testing or communication or major impairment in several areas, such as work, family relations, judgment, thinking, or mood.  *Id*

[3] In her motion, Haslam argues that the ALJ erred in giving significant weight to Dr. Moten's opinion because that opinion is not consistent with Dr. Dibai's assignment of a GAF score of 39. (Doc. #11 at 24-25).  The Commissioner argues, however, that "GAF scores are not particularly useful in Social Security cases" and that it was entirely appropriate for the ALJ to rely on Dr. Moten's "detailed assessment of [Haslam's] functioning … over that of simple GAF scores." (Doc. #14 at 11, 12).  The Court agrees with the Commissioner as a general proposition; here, however, where Dr. Moten's opinion is at odds with both the GAF score assigned by Dr. Dibai, and other significant mental health evidence in the record, the Court cannot conclude that the ALJ's decision to afford significant weight to this opinion is supported by substantial evidence.

Dr. Moten's opinion as to Haslam's mental abilities is also at odds with subsequent medical records reflecting ongoing mental health treatment with Phillip Lanzisera, Ph.D. (Tr. 616-35). For example, on February 19, 2014, Haslam presented to Dr. Lanzisera with "substantial depression with hopelessness, anergia, withdrawal, and with substantial anger." (Tr. 616). She appeared "very distressed" that mental health treatment would not resolve her underlying physical pain. (*Id.*). She was diagnosed with pain disorder associated with psychological and physical factors and moderate recurrent major depression, with a poor prognosis. (*Id.*). The next week, Haslam reported continued pain and depression and remained "somewhat distant." (Tr. 617).

The next time Haslam presented to Dr. Lanzisera was on April 17, 2014 (after her inpatient psychiatric hospitalization). (Tr. 618-19). Dr. Lanzisera noted that Haslam's medications had been changed at that time and that she was "slowly improving," saying that she "went through a strong intensification of depression and is now stabilized again." (Tr. 619). On May 5, 2014, Haslam reported continued dysphoria, thoughts of death, pain, and impairment in daily life and functioning. (Tr. 620). Dr. Lanzisera noted that her overall condition was "unchanged," saying that her "pain and passivity are major obstacles to overcome …." (*Id.*). On June 20, 2014, Haslam reported continued depression and social withdrawal; Dr. Lanzisera noted that her condition was "unchanged" and, given her failure to respond to treatment, expressed a need to "push activity building but also consider adjusting her medication." (Tr. 622). On July 8, 2014, Haslam reported that her mother had died the week before, and she remained depressed, "with withdrawal and helplessness dominating her thoughts." (Tr. 624).

After that, Haslam did not return to see Dr. Lanzisera until November 4, 2014, at which time she reported "worsening depression," withdrawal, helplessness, and passive suicidal

ideation. (Tr. 627). She reported feeling immobilized by pain and depression and, despite missing several sessions, said she was committed to working in therapy. (*Id.*). Dr. Lanzisera felt it necessary to call Haslam's husband that day, specifically to ensure that any weapons in the house were locked up; he also told Haslam's husband that "if we do not get [Haslam] to be more active and to find some improvement in symptoms, we may need to hospitalize her even though she does not want that." (*Id.*). At her next visit, on November 7, 2014, Haslam continued to report severe depression and lack of energy; Dr. Lanzisera described her condition as "[s]ubstantial depression with some current passive suicidal ideation but with extensive withdrawal, helplessness and tendency to have difficulty seeing ability to get better." (Tr. 629-30). The following week, on November 14, 2014, Haslam "acknowledged feeling a bit better," but continued to "verbalize[] a strong preference for staying in her room …." (Tr. 632). On November 18, 2014, Haslam was still "severely depressed," with a "continued wish to stay in her room." (Tr. 634).

In determining whether substantial evidence supports the ALJ's decision to afford "significant weight" to Dr. Moten's opinion, the Court considers not only that all of this mental health evidence exists – evidence that post-dates Dr. Moten's opinion – but also that the ALJ failed to meaningfully analyze it. Indeed, with respect to Haslam's mental health treatment records after Dr. Moten's September 2013 opinion, the ALJ said only: "She became deeply depressed in April 2014. The Claimant was hospitalized for about seven days. However, claimant was mentally cleared for her gastric bypass in December 2014." (Tr. 26). While the Commissioner argues that the record contains some subsequent evidence of improvement (Doc. #14 at 9-10), it was the ALJ's responsibility, as the fact-finder, to meaningfully discuss and weigh any such evidence against the significant evidence discussed above of Haslam's ongoing

treatment for severe mental impairments. *See, e.g., Schroeder v. Comm'r of Soc. Sec.*, 2013 WL 1316748, at *13 (E.D. Mich. Mar. 1, 2013) (Commissioner's "*post hoc* rationalization" is not an acceptable substitute for the ALJ's failure to adequately evaluate the medical evidence); *Garza v. Comm'r of Soc. Sec.*, 2016 WL 703038, at *6, n. 5 (E.D. Mich. Jan. 22, 2016) ("[I]t is the function of the ALJ – not this Court – to evaluate and weigh the relevant medical evidence."). The ALJ's limited analysis simply is inadequate in that respect, and precludes the Court from finding that her RFC determination is supported by substantial evidence. Moreover, in light of the nature and extent of the medical evidence discussed above, the Court cannot say that the ALJ's failure to properly discuss it constitutes harmless error. Thus, remand is warranted to properly evaluate the record evidence.[4]

### III. CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [14] be DENIED, Haslam's Motion for Summary Judgment [11] be GRANTED IN PART to the extent it seeks remand and DENIED IN PART to the extent it seeks an award of benefits, and that this case be remanded to the ALJ for further proceedings consistent with this Recommendation.

Dated: February 28, 2017  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
 United States Magistrate Judge

---

[4] In her motion for summary judgment, Haslam advances other arguments – namely, that the ALJ erred in weighing the opinions of other physicians, that the ALJ's credibility determination is not supported by substantial evidence, and that remand is necessary pursuant to sentence six of 42 U.S.C. §405(g) for consideration of additional evidence first submitted to the Appeals Council. (Doc. #11 at 25-29). Because the Court is recommending remand on other grounds, it need not address in detail the merits of these arguments. On remand, however, the ALJ should fully consider these other issues raised by Haslam.

13

## NOTICE REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 28, 2017.

                                         s/Eddrey O. Butts
                                         EDDREY O. BUTTS
                                         Case Manager